IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.P. | : CIVIL ACTION |
| | : |
| v. | : NO. 15-2446 |
| | : |
| PENN-DELCO SCHOOL DISTRICT | : |

KEARNEY, J.                                                                             November 20, 2015

### MEMORANDUM

Parties to settlement agreements and releases are bound by the agreement's unambiguous terms and cannot, in hindsight, create ambiguity through parol facts to change the agreement's plain language. When a parent may be entitled to attorneys' fees and costs after winning a due process hearing under the Individuals with Disabilities Education Act ("IDEA") and then releases all claims for recovery, she cannot then bring an action for attorneys fees even if she previously assigned her right to attorneys' fees to her lawyer but failed to recognize this assignment in the settlement. Otherwise, parties settling claims would suffer continuing risk of ineffective releases because, as not disclosed in the integrated agreement, someone else may now own the claim. We decline to read an assignment into a contract where the parties did not include this significant change of term in their broad release language. We cannot find an ambiguity in the parties' settlement agreement negotiated by the same counsel now claiming to own an assignment of the attorneys fees. In the accompanying Order, we grant the school district's motion for summary judgment and deny the parent's cross- motion.

I.   **Undisputed facts**[1]

M.P. ("M.P.") on behalf of her son, I.W., seeks attorneys' fees and costs against Penn-Delco School District ("District") arising from M.P's successful defense of an administrative due process proceeding in May 2013. The District contends the present action for attorneys' fees is barred by the parties' July 14, 2014 Settlement Agreement and Release, in which M.P. released claims for the attorneys' fees.

I.W. is a student eligible for special education services under the IDEA.[2] In October 2012, as part of I.W.'s educational program, the District completed a Functional Behavioral Assessment designed to identify factors which may trigger I.W.'s unacceptable behavior.[3] M.P. disagreed with the District assessment and, under the IDEA, requested a publicly-funded Independent Educational Evaluation ("IEE").[4] The IDEA requires the District to either pay for the IEE or request a due process hearing to determine whether its initial evaluation is appropriate.[5] The District requested a due process hearing on M.P.'s request. The parties participated in the due process hearing on May 4, 2013. The hearing officer ruled the District must provide an IEE to M.P. This "IEE Matter" resolved in M.P.'s favor. As a result, M.P. then had the right to attorneys fees incurred in the IEE Matter.

The parties continued to dispute I.W.'s education plan. In February 2014, M.P. claimed the District had not provided I.W. with an IDEA free, appropriate public education. The parties resolved their disputes on July 14, 2014 when M.P. and the District signed a Settlement Agreement and Release (the "Release") resolving "any and all potential or outstanding education, civil rights and/or special education claims of any kind..."[6]

*The July 14, 2014 Settlement Agreement and Release*

In relevant part, the Release's preamble provides:

Intending to be legally bound, the Parents and District (hereinafter the "Parties") declare that, <u>in settlement of any and all potential or outstanding education, civil rights and/or special education claims of any kind</u> from the beginning of time through the date of this Agreement (defined as the date on which the Agreement is fully executed by both parties), whether known or not known (<u>including but not limited to</u> compensatory education; tuition reimbursement, except as provided herein; transition services; extended school year; compensatory damages; reimbursement for education and/or therapeutic services privately obtained for Student by Parents; <u>attorney fees and costs</u>; and any and all expert witness fees and costs, evaluations, charges, obligations or liabilities), <u>and in order to avoid continued disputes and litigation which have arisen or may arise between the Parties</u>, the Parties agree to the following: ...[7]

The Release, at Paragraphs 7 and 8, also includes "Waivers and Releases":

7. The Parents acknowledge and affirm that by agreeing to accept the consideration defined in this Agreement that they are <u>knowingly, voluntarily and willingly waiving rights</u> as they may pertain <u>to any and all educational, civil rights or special education claims</u>, including any and all claims for compensatory damages, that they and/or the Student may otherwise have, whether known or not known, arising under the Individuals with Disabilities Act.... and its implementing regulations ... and any other state or federal law or regulation, now existing or which may come into existence, from the beginning of time through the date of this Agreement.[8]

8. Parents acknowledge and agree that by accepting the aforesaid payments and terms as set forth above, they <u>release and forever discharge the District</u> and its present and past directors, officers, attorneys, employees, agents or insurers, <u>from any educational or civil rights claims or demands of any kind, administrative or judicial, including all claims that were asserted or which could have been asserted in any special education administrative due process hearing for Student</u> or any proceeding in a court of competent jurisdiction, concerning any aspect of the Student's education from beginning of time through the date of this Agreement <u>including, but not limited to,</u> claims or demands for tuition reimbursement; transition services; extended school year; reimbursement for educational and/or therapeutic services and/or evaluations obtained by Parents for Student; compensatory education; compensatory damages; transportation; <u>attorneys fees and costs</u>; expert witness fees, costs and evaluations; and equitable relief.[9]

3

At paragraph 11, M.P. further represents,

...(c) that they are fully aware that they are waiving rights on behalf of the Student, (d) that they have had the opportunity to consult with legal counsel concerning their rights and this Agreement and Release..... and (f) that they are signing this Agreement and Release, including this waiver of important rights, voluntarily.[10]

The Release also contains an integration clause, providing it is the "entire agreement and understanding" between the parties and "supercedes and rescinds all prior or contemporaneous agreements or understanding..."[11]

## II. Analysis

M.P. then sued the District seeking attorneys' fees as a "prevailing party" in the 2013 IEE Matter.[12] The District contends M.P waived and released any claim for attorneys' fees arising from her status as a prevailing party in the IEE Matter in the Release. We now resolve the parties' cross motions for summary judgment.[13]

The District contends the Release's plain language bars M.P.'s claim to attorneys' fees.[14] M.P. contends the Release's plain language does not apply because (1) she had no claim in the IEE Matter, and its current claim is not covered by the Release resolving "all potential or outstanding educational, civil rights, and/or special education claims of any kind; (2) M.P. assigned her claim for attorneys' fees long before signing the Release and could not have released her attorneys fee claim; and, (3) while negotiating the Release, counsel reached an oral mutual understanding the extensive settlement agreement would not cover the attorneys fees in the IEE matter.

### A. M.P.'s Waiver and Release

Pennsylvania principles governing contract interpretation are well settled.[15] The goal is to ascertain the intent of the parties as manifested by the language of the written instrument.[16]

4

Where the language of the contract is clear and unambiguous, a court is required to give effect to the plain language.[17] "The law does not assume that the language of the contract was chosen carelessly."[18]

When entered into voluntarily and willingly, a settlement agreement is a binding contract between parties, enforceable as written.[19] In construing waiver and release of a claim in a settlement agreement, we ascertain the parties' intent in the express language of the Agreement.[20] Where parties expressed their intent in a settlement agreement and release and were represented by skilled attorneys, we should not look beyond the plain language to understand their agreement.[21]

M.P. and the District signed the Release "[i]ntending to be legally bound."[22] The Release resolved "any and all potential or outstanding . . . claims of any kind from the beginning of time through [July 14, 2014], whether known or not known (including but not limited to . . . attorney fees and costs")."[23] It specifically references claims "arising under . . . the IDEA and its implementing regulations".[24] Paragraph seven (7) includes language clarifying "Parents acknowledge and affirm . . . they are *knowingly, voluntarily and willingly waiving* rights as they may pertain to any and all . . . claims."[25] In paragraph eight (8), M.P. "*releases* and forever discharge[s]" the District from the aforementioned claims.[26] In consideration for M.P.'s Release, the District agreed to place $25,000 into an education trust for I.W.'s legitimate education expenses (App. 63, ¶ 5) and agreed to reimburse M.P. for "attorneys fees and costs" of $20,000.[27] M.P. acknowledges the District's payments under the Release are "sufficient consideration for a settlement and compromise of any and all outstanding education, civil rights and/or special education claims that they may now have or have had …"[28]

The Release plainly states the parties desired to "avoid continued disputes and litigation which have arisen or may arise between the Parties."[29] At the time she signed the Release, MP had a statutory right to attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(I) from the IEE Matter, resolved in May 2013. We view the Release's plain language as clear evidence of intent to resolve all outstanding disputes, including disputes over attorneys' fees. Whether, as M.P. suggests, the parties *actually* intended the Release to exclude a release of a claim to attorneys' fees from the IEE matter is contravened by the Release's plain language.

Competent counsel represented the parties in negotiating the Release. Counsel saw no need for a clause in the Release carving an exception for attorneys' fees incurred by M.P. in the 2013 IEE Matter. This same counsel now claims it then held the assignment. Were this truly the parties' intent, a simple paragraph could have easily clarified any ambiguity particularly since it would benefit the lawyer negotiating the Release.[30] We view the Release in accordance with its plain terms. The Release bars any action by M.P. against the District for attorneys' fees under the IDEA arising from the May 2013 IEE Matter.[31]

We find the release unambiguous. There is no carve out for claims arising from the IEE Matter, although both parties knew of the IEE Matter from 2013 at the time they signed the Agreement.

**B.     Ambiguity**

To infuse some ambiguity into the Release, M.P contends it had no "claim" in the IEE Matter on July 14, 2014, and accordingly there was no "potential or outstanding claim" to release.

We disagree. M.P.'s claim reopened when she prevailed in May 2013. We see no reason to look beyond the plain language of the Release in determining the intent of the contracting

6

parties at the time they signed it.[32] "If it were otherwise, every release would be subject to attack whenever a contracting party has a change of heart."[33]

Further, "[a] claim of latent ambiguity must be based on a 'contractual hook': the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract, rather than simply support a general claim that the parties meant something other than what the contract says on its face."[34] When arguing an unambiguous release contains a latent ambiguity, a party must offer a reasonable alternate interpretation of the release and its extrinsic evidence "must be about the parties' 'linguistic reference' rather than about their expectations."[35] M.P. directs us to no such latent ambiguity or reasonable alternate interpretation. M.P. instead focuses on her, or her lawyer's, expectations.

Where a release contains a clear and unambiguous waiver of a claim, a contracting party cannot evade the effect of the release by contending it did not subjectively intend to waive the claim at issue.[36] To permit M.P. to avoid the clear and unambiguous contract terms in these circumstances would require us to rewrite the parties' Release, which we cannot do.[37]

### C. Assignment

M.P. claims it could not have waived a claim of right to attorneys' fees in the IEE Matter in July 2014 because she already assigned this claim to I.W.'s counsel and did not have a claim to release. M.P. is bound by the Release she signed. If M.P. assigned her claim to attorneys' fees at the time she executed the Release, as M.P. suggests, her counsel is required to disclose this material fact to the District when settling and resolving claims particularly when it is the beneficiary of the alleged assignment. We specifically do not decide whether M.P.'s alleged concealment of this important fact, at the same time she agreed to settle and release all claims, may be fraudulent.

### D. Mutual Understanding

M.P. asks us to rely on affidavits and other evidence suggesting she never intended the Release to cover a claim to attorneys' fees arising in the IEE Matter in May 2013. Because we read no ambiguity in the Release, the parol evidence rule bars consideration of this argument.

The parol evidence rule prohibits oral declarations made at the time of contract for purposes of interpreting the contract.[38] The rule applies where, as here, the contract represents the entire agreement between the parties.[39] "An integration clause stating the writing represents the parties' entire agreement is also a clear sign [it is] just that and . . . expresses all of the parties' negotiations, conversations, and agreements made prior to its execution."[40]

The Release contains an integration clause and specifically represents it "supercedes and rescinds all prior or contemporaneous agreements or understanding..."[41] The parol evidence rule applies and bars extrinsic evidence for the purpose of altering the plain language.

### III. Conclusion

We examined the validity of an arms-length negotiated Release in which competent experienced counsel represented each party. We find the clear and unambiguous language of the July 14, 2014 Settlement Agreement and Release bars M.P.'s claim. In the accompanying Order, we grant summary judgment in favor of the District and against M.P. As the plain language of the Release governs our decision in this case, we need not reach the District's alternate grounds for summary judgment, including standing, accord and satisfaction, promissory estoppel, fraud and statute of limitations. We also deny the District's request for attorneys' fees as M.P. and her counsel may have been mistaken in assuming an oral understanding not in an integrated agreement but the District did not present evidence of bad faith or Rule 11 conduct.

---

[1] The Court's Policies require a Statement of Undisputed Facts ("SOF") and Appendix ("App.") filed in support of a summary judgment motion. Defendants' SOF (ECF Doc. No. 12-1) is referenced as ("DSOF"); Plaintiff's SOF (ECF Doc. No. 13-3) is referenced as ("PSOF").

[2] App. 3.

[3] App. 4.

[4] DSOF ¶6.

[5] DSOF ¶7.

[6] App. 62.

[7] App. 62 (emphasis added).

[8] App. 64, ¶7.

[9] App. 65, ¶8.

[10] App. 66, ¶11.

[11] *Id.* ¶12.

[12] Under the IDEA, "a district court may, in its discretion, award reasonable attorneys' fees to a prevailing party." *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 501 (3d Cir. 2012) *citing* 20 U.S.C. §1415(i)(3)(B)(i)(I) (internal quotation marks omitted).

[13] Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. An issue is genuine if a reasonable jury could possibly hold in the nonmoving party's favor with regard to that issue. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A fact is material only if it could affect the result of suit under governing law. *Id.* All facts are viewed in the light most favorable to the nonmoving party and all inferences are drawn in that party's favor. *Id.*

[14] The District raises other substantive and procedural arguments in support of summary judgment. As we find the plain language of the parties' July 14, 2014 Settlement Agreement and Release bars M.P.'s claim to attorneys' fees, we need not reach its additional grounds for summary judgment.

[15] *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983).

[16] *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006).

[17] *See Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.,* 233 A.2d 548 (Pa. 1967).

[18] *Medici v. Pocono Mountain Sch. Dist.,* No. 09-2344, 2011 WL 2491449, at *4 (M.D. Pa. June 22, 2011)(citations omitted).

[19] *D.R. by M.R. v. East Brunswick Bd. of Educ.,* 109 F.3d 896, 901 (3d Cir.1997); *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 282 (3d Cir. 2014) *cert. denied sub nom. Allston v. Lower Merion Sch. Dist.,* 135 S. Ct. 1738 (2015). Neither party disputes Pennsylvania law governs this case. App. 66, ¶ 13.

[20] *Bickings v. Bethlehem Lukens Plate,* 82 F.Supp.2d 402, 405-06 (E.D. Pa. 2000).

[21] *Blunt, supra* at 282; *see also Miller v. Ginsberg,* 874 A.2d 93, 99 (Pa.Super.Ct.2005).

[22] App. 62.

[23] App. 62, ¶ 13.

[24] App. 64, ¶ 7.

[25] *Id.* (emphasis added).

[26] App. 65, ¶ 8.

[27] App. 64, ¶ 6.

[28] App. 65, ¶ 10.

[29] App. 62.

[30] M.P. asks us to construe the Release against the District because its counsel drafted it. We find this principle, used in cases where terms are indefinite or ambiguous, unnecessary here as the Release contains no ambiguity. *See e.g. Ross v. Shawmut Dev. Corp.,* 333 A.2d 751, 754 (Pa. 1975). Moreover, neither party disputes competent counsel represented them when they negotiated and signed the Release.

[31] *See e.g. Medici, supra* at *4. Faced with a similar issue in *Medici,* the Court held the parties' explicit, unambiguous agreement barring "further claims of any kind" warranted summary judgment for the school district on plaintiff's claim to attorneys' fees. *Id.* at *5.

[32] *Camiolo v. State Farm Fire & Casualty Co.,* 334 F.3d 345, 361 (3d Cir.2003); *G.R. Sponaugle & Sons, Inc. v. Hunt Constr. Grp., Inc.,* 366 F.Supp.2d 236, 242-43 (M.D.Pa.2004).

[33] *Taylor v. Solberg,* 778 A.2d 664, 667–668 (Pa. 2001) ("If such a release can be nullified or circumvented, then every written release and every written agreement of any kind, no matter how

clear and pertinent, can be set aside whenever one of the parties changes its mind or the injured party receives an inadequate settlement.")

[34] *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 96 (3d Cir. 2001).

[35] *Id.* at 96 (citing *Dusquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995).

[36] *Jordan v. SmithKline Beecham,* 958 F.Supp. 1012, 1019-20 (E.D. Pa.1997)(citing *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989).

[37] *Standard Venetian Blind, supra*, 469 A.2d at 566.

[38] *Rose v. Food Fair Stores, Inc.*, 262 A.2d 851, 853 (Pa. 1970).

[39] *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 994 (3d Cir. 1987); *1726 Cherry St. Partnership v. Bell Atlantic Properties*, 653 A.2d 663 (Pa. Super. 1995).

[40] *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

[41] App. 66, ¶12.